IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSE TRINIDAD LOZA,

     Petitioner,

    v.

BETTY MITCHELL, Warden,

     Respondent.

Case No. 1:98-cv-287
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, filed a habeas corpus action

pursuant to 28 U.S.C. § 2254. On March 31, 2010, this Court issued an *Opinion and Order*

denying Petitioner's claims and dismissing his action. (Doc. # 91.) This matter is before the

Court on Petitioner's motion to alter or amend pursuant to Fed. R. Civ. P. 59(E) (Doc. # 94),

Respondent's opposition (Doc. # 95), and Petitioner's reply (Doc. # 96). Also before the Court

are Respondent's motion for a status conference (Doc. # 97), Respondent's notice of additional

authority (Doc. # 98), and two notices of additional authority filed by Petitioner (Doc. #'s 99 and

100).

### I. Standard

Rule 59(e) of the Federal Rules of Civil Procedure allows parties, within ten days of the

date of a judgment, to request the Court to alter or amend that judgment. Rule 59(e) relief is

available to correct a clear error of law, to give effect to an intervening change in controlling law

or newly discovered evidence, or to prevent a manifest miscarriage of justice. *Gencorp, Inc. v.*

*American International Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A motion to alter or

amend judgment pursuant to Rule 59(e) is not an opportunity to re-argue the same facts, law, or

evidence. Thus, a petitioner should not use a Rule 59(e) motion to present arguments that could, and should, have been raised during the litigation. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Similarly, a Rule 59(e) motion is not the proper vehicle for arguments better suited for appeal. *See Keweenaw Bay Indian Community v. Michigan*, 152 F.R.D. 562, 563 (W.D. Michigan 1992) ("Where the movant is attempting to obtain a complete reversal of the court's judgment by offering essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal.").

## II. Discussion

Petitioner urges the Court to alter its judgment on his first, second, third, fourth, eighth, ninth, and seventeenth grounds for relief. (Doc. # 94.) As summarized by Petitioner:

> Petitioner asserts five (5) bases in support of his Rule 59 Motion. In his First Argument, Petitioner alleges that this Court committed a clear error of law in its application of AEDPA when the Court–though acknowledging the state court's lack of analysis–applied AEDPA deference nonetheless.

> In his Second Argument, Petitioner alleges that the Court committed clear errors of fact and law in denying Petitioner's *Crane v. Kentucky*, 476 U.S. 683 (1986) argument and the he [sic] should be granted habeas relief. This Court applied an overly broad construction of AEDPA to allow the affirmance of a state ruling under AEDPA for reasons never expressed by the state court and never argued by Respondent, relied on a state evidentiary basis, which was subsequently overruled by the Ohio Supreme Court prior to the decision in Petitioner's direct appeal.

> In his Third Argument, Petitioner alleges that the Ohio Supreme Court and this Court failed to consider United States Supreme Court precedent directly on point regarding whether Petitioner's statement should have been suppressed. *See Lynumn v. Illinois*, 327 U.S. 528 (1963). Further, Petitioner alleges this Court erred by failing to consider the totality of the circumstances that led to Petitioner's confession, and which rendered Petitioner's confession involuntary and inadmissible.

> In his Fourth Argument, Petitioner alleges that in considering his

2

*Strickland* claim the Court overlooked trial counsel's affidavits that established they did not investigate and failed to understanding [sic] the significance of Petitioner's culture. Further, this Court overstated Dr. Fisher's testimony; he is not a cultural expert. Finally, Petitioner alleges this Court failed to give effect to the Sixth Circuit's discussion of the impact of cultural evidence from *Morales v. Coyle*, 507 F.3d 916 (6th Cir. 2007), and improperly denied relief in the face of Petitioner's non-cumulative mitigation that was never presented.

In his Fifth Argument, Petitioner alleges that this Court erred in its consideration of Petitioner's *United States v. Armstrong*, 517 U.S. 456 (1996) claim. This Court failed to accord any inference, not even of a discriminatory purpose, from the racially derogatory statement by the person who made the capital charging decision, in violation of *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009).

(Doc. # 94, at 4-5.)

### A.  AEDPA Deferential Review on Grounds Three, Eight, and Nine

Petitioner asserts in his first argument that this Court committed a manifest error of law by applying the AEDPA's deferential review, rather than de novo review, to claims rejected by the state courts in decisions that, according to Petitioner, did not constitute adjudications on the merits. Petitioner raises this argument as to this Court's decision rejecting his third, eighth, and ninth grounds for relief.

In his third ground for relief, Petitioner argued that his rights under Article 36 of the Vienna Convention on Consular Relations were violated when local law enforcement officers not only failed to notify him without delay that, as a Mexican national, Petitioner had an absolute right to communicate with the Mexican consulate, but also failed to notify the Mexican consulate without delay that Petitioner had been arrested. (Petition, Doc. # 6, at ¶¶ 50-71.)  The last state court to issue a reasoned decision rejecting Petitioner's claim was the intermediate state appellate court in postconviction. Focusing on a statement in the state appellate court's decision

3

concluding that Petitioner's "claim did not constitute a substantive ground that entitled him to postconviction relief," Petitioner argued to this Court that the state court's decision did not constitute an adjudication on the merits as contemplated by 28 U.S.C. § 2254(d). That being so, Petitioner argued, this Court was obligated to conduct de novo review of his claim, rather than the deferential review set forth in § 2254(d). This Court disagreed. First, the Court explained that in the Sixth Circuit, "even in the absence of a decision by the state courts addressing the substance of a properly raised federal claim, federal habeas courts are required to 'conduct an independent review of federal law to determine if the state court either contravened or unreasonably applied clearly established federal law....' " (*Opinion and Order*, Doc. # 91, at 32.) This Court relied on *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002) (citing *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); and *Doan v. Brigano*, 237 F.3d 722, 730-31 (6th Cir. 2001). Second, the Court concluded that the state appellate court's decision amounted to an adjudication on the merits sufficient to invoke § 2254(d)'s deferential review in spite of the foregoing approach employed in the Sixth Circuit.

In his eighth ground for relief, Petitioner argued that the trial court's instruction on purpose and intent–specifically, what the jury could presume from Petitioner's use of a deadly weapon–combined with certain components of the prosecution's closing argument, had the effect of creating a conclusive presumption that relieved the State of its burden to prove the essential element of purpose. (Petition, Doc. # 6, at ¶¶ 142-148.) The Ohio Supreme Court rejected Petitioner's claim on direct appeal, essentially concluding that the jury instruction at issue did not create a conclusive presumption of guilt. Petitioner argued before this Court that because the Ohio Supreme Court made that determination without articulating the controlling federal

standard, its decision did not constitute an "adjudication on the merits" sufficient to invoke

AEDPA's deferential review. This Court disagreed. Relying on *Howard v. Bouchard*, 405 F.3d

459, 467-68 (6th Cir. 2005), and *Hawkins v. Coyle*, 547 F.3d 540, 546-47 (6th Cir. 2008), this

Court reiterated the Sixth Circuit's position that some measure of the AEDPA's deferential

review still governed this Court's review of Petitioner's claim. Observing that Petitioner's claim

was all but foreclosed by Sixth Circuit precedent, this Court found Petitioner's claim meritless

because the Ohio Supreme Court's decision rejecting Petitioner's claim did not produce a result

that contravened clearly established federal law. (Doc. # 91, at 112-115.)

  In his ninth ground for relief, Petitioner argued that the trial court went further than

necessary with supplemental instructions in response to a question the jury submitted in the midst

of its deliberations: We the jury would like to have clarified how to decide a verdict on a

specification to a count when a unanimous decision cannot be reached? (Petition, Doc. # 6, at ¶¶

149-154.) The Ohio Supreme Court rejected Petitioner's claim on direct appeal on the basis that

it had already approved the type of instruction that the trial court gave. Petitioner urged this

Court to forsake the AEDPA's deferential review in favor of de novo review for the reason that

the Ohio Supreme Court's decision failed to articulate or apply the controlling federal standard.

As with Petitioner's eighth ground for relief, this Court disagreed. Specifically, this Court

concluded that some measure of the AEDPA's deference still governed this Court's review and

that because Petitioner's claim was essentially foreclosed by Sixth Circuit precedent, it could not

be said that the Ohio Supreme Court's decision rejecting Petitioner's claim had produced a result

that contravened clearly established federal law. (Doc. # 91, at 119-126.)

  It is the Court's application of a measure of the AEDPA's deference to those claims that

5

Petitioner characterizes as a manifest error of law. Specifically, Petitioner argues that, "[t]his Court committed a clear error of law in its application of AEDPA when the Court–though acknowledging the state court's lack of analysis–applied AEDPA deference nonetheless." (Doc. # 94, at 8.) According to Petitioner, "[t]he principle of a hybrid or modified AEDPA recognized by the Sixth Circuit and applied by the Court is a legal outlier and has been expressly rejected by the United States Supreme Court." (*Id*. at 8-9.) Petitioner's argument is not well taken.

The Supreme Court decisions offered by Petitioner do not support his argument that the Supreme Court has expressly rejected the approach fashioned by the Sixth Circuit and followed by this Court. Accordingly, it cannot be said that this Court committed a manifest error of law by applying the Sixth Circuit's modified AEDPA deference line of cases. The cases cited by Petitioner endorsed the exercise of de novo review, rather than deferential review, over issues that were not decided at all by the state courts. *See Porter v. McCollum*, 130 S.Ct. 447, 452 (2009) ("Like the postconviction court, the Florida Supreme Court reserved judgment regarding counsel's deficiency."); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272-273, and so we examine this element of the *Strickland* claim *de novo*...."); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."). Those cases do not, as Petitioner contends, stand for the proposition that "[i]n an explained entry, if the state court failed to analyze (by omission or the improper application of default) or analyzed employing a wrong or incorrect standard, the Supreme Court and every other circuit find that AEDPA does not further constrain the review of the federal constitutional

6

claim." (Doc. # 94, at 9.)

As for whether or to what extent "every other circuit" has employed an approach different than that set forth by the  Sixth Circuit in its modified AEDPA deference line of cases, that consideration is wholly inapposite to the Court's determination of whether Rule 59 relief is warranted.  Although this Court may turn to cases from other circuits as persuasive authority, this Court is bound by Sixth Circuit precedent.

Similarly, the Sixth Circuit decisions relied upon by Petitioner as demonstrating that "[s]ome Judges of the Sixth Circuit recognize the extreme and outlier nature of" the Sixth Circuit's modified AEDPA deference line of cases do not establish that this Court committed a manifest error of law by relying on that line of cases.  (Doc. # 94, at 9.)  The opinions cited by Petitioner consist of concurring or dissenting opinions or decisions that otherwise failed to outright overrule or otherwise deviate from the modified AEDPA deference line of cases without distinguishing the cases before them from the modified AEDPA deference line of cases.  This Court cannot be said to have committed a miscarriage of law for failing to do what the Sixth Circuit itself has yet to do–namely, deviate from, rather than distinguish or outright overrule, the Sixth Circuit's modified AEDPA deference line of cases.  Moreover, the Sixth Circuit has issued several recent decisions explaining, endorsing, and applying modified AEDPA deference.  *See, e.g., Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008) ("Where the state court disposes of a Federal constitutional claim with little-to-no articulated analysis of the constitutional issue, this circuit applies a modified form of AEDPA deference."); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005) ("Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis, ..., [w]e have taken an intermediate approach–in between de novo review

7

and complete deference.").

Petitioner points to a number of decisions where, according to Petitioner, the Sixth

Circuit followed the AEDPA and declined to apply modified AEDPA deference.  (Doc. # 94, at

10.)  Petitioner's argument falls short of requiring Rule 59 relief because decisions by the Sixth

Circuit that appear to have broken with the modified AEDPA deference line of cases also do not

establish that this Court committed a manifest error of law by following the modified AEDPA

line of cases.  As the Sixth Circuit recently reminded in *Alexander v. Smith*:

> The Sixth Circuit's rules state that published panel opinions are binding on
> all subsequent panels. 6th Cir. R. 206(c). "A panel of this Court cannot overrule
> the decision of another panel. The prior decision remains controlling authority
> unless an inconsistent decision of the United States Supreme Court requires
> modification of the decision or this Court sitting en banc overrules the prior
> decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.
> 1985); *see also United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)
> (disregarding the rule set forth in two published opinions in favor of a contrary
> rule established by an earlier case resolving the same issue); *United States v.
> Moody*, 206 F.2d 609, 615 (6th Cir. 2000) ("Although we find the dissent's
> reasoning convincing, we must follow the precedent [established by an earlier
> decision]."). Whether or not *Abela* is correct "is not our place to say" insofar as
> *Abela* conflicts with still earlier cases. *Darrah v. City of Oak Park*, 255 F.3d 301,
> 309-10 (6th Cir. 2001). Rather, we must apply the prior decision, because a later
> panel cannot overturn this court's precedent.***

311 F.App'x 875, 883-84 (6th Cir. 2009). Thus, to the extent that any published Sixth Circuit

decisions subsequent to the Sixth Circuit's modified AEDPA deference line of cases strayed

from that line of cases on factual scenarios materially indistinguishable from the modified

AEDPA deference line of cases, those decisions were erroneous; they do not permit this Court to

simply ignore the Sixth Circuit's modified AEDPA deference line of cases or establish that this

Court committed a manifest error of law in applying that line of cases.

Petitioner insists that Congress's use of the word "adjudication" in 28 U.S.C. § 2254(d)

8

evinced an intent that federal courts focus on the process of a state court's decision rather than the result of the state court's decision. That may or may not be true, but it has no bearing on the inquiry at hand. Petitioner's argument does not establish that this Court committed a manifest error of law in following binding Sixth Circuit precedent.

Notwithstanding the foregoing, it bears reminding that even assuming this Court had not been required by Sixth Circuit precedent to apply modified AEDPA deference in reviewing Petitioner's claims that received less than ideal reasoning by the state courts, this Court stated explicitly as to Petitioner's first ground for relief, and implicitly as to Petitioner's eight and ninth grounds for relief, that the state court decisions rejecting those claims were in fact adjudications on the merits sufficient to invoke the deferential review set forth in 28 U.S.C. § 2254(d). The bar has been set low for what constitutes a reasoned decision, as opposed to a summary disposition understood as producing no results. As the Sixth Circuit has explained, "[t]he state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.' " *Dennis v. Mitchell*, 354 F.3d 511, 517-18 (6th Cir. 2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

For that reason and others, Petitioner's reliance on the United States Supreme Court's decision in *Harrington v. Richter*, which had not been decided at the time Petitioner filed his Rule 59 motion but has since been decided, is misplaced.[1] In *Harrington*, the Supreme Court

---

[1]     The Supreme Court decided *Harrington* on January 19, 2011. On February 2, 2011, Respondent filed a notice of the decision, arguing that it supported the Court's decision denying relief and militated against granting Petitioner's motion for Rule 59 relief. (Doc. # 98.) On March 18, 2011, Petitioner filed a notice of the decision, disputing Respondent's interpretation and arguing that *Richter* supports Petitioner's argument for Rule 59 relief. (Doc.

9

held, among other things, "that § 2254(d) does not require a state court to give reasons before its

decision can be deemed to have been 'adjudicated on the merits.' " *Harrington v. Richter*, 131

S.Ct. 770, 785 (2011). Petitioner argues that because *Harrington* was decided in the context of a

collateral state court proceeding, it applies only to habeas claims that were presented to the state

courts in a collateral proceeding. (Doc. # 99, at 2.) Petitioner also argues that *Harrington* allows

for excusing § 2254(d) deference where there is good reason to believe that an unexplained state

court entry rejecting a claim was based on reasons other than the merits that claim. (*Id*. at 3-6.)

Those arguments fall short where, as here, the habeas court finds that a state court decision,

despite its paucity, was in fact an adjudication on the merits sufficient to invoke the deferential

review set forth in 28 U.S.C. § 2254(d). Similarly, the Court is not persuaded by the argument in

Petitioner's reply that the Supreme Court's discussion in *Renico v. Lett*, 130 S.Ct. 1855, 1862

(2010) constitutes "intervening authority" that requires this Court either to amend its judgment.

The foregoing demonstrates that *Schoenberger* and the Sixth Circuit's modified AEDPA

deference line of cases were good law at the time this Court issued its judgment and remain good

law to date. Accordingly, this Court's application of *Schoenberger*'s modified AEDPA

deference cannot be characterized as a manifest error of law. Petitioner's argument questioning

the wisdom or fairness of *Schoenberger*'s modified AEDPA deference is one more suited for

appeal.

### B.  First Ground for Relief

Petitioner contends that this Court committed manifest errors of fact and law in its

decision rejecting his first ground for relief. Petitioner argued in his first ground for relief that

----

#99.)

10

the trial court violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by preventing him from introducing testimony from an expert psychologist in an effort to demonstrate why Petitioner's confession to law enforcement officers was neither reliable nor credible. (Petition, Doc. # 6, at ¶¶ 1-9.) This Court concluded that Petitioner's claim did not warrant habeas corpus relief because the Ohio Supreme Court's decision rejecting his claim on direct appeal did not contravene or unreasonably apply clearly established United States Supreme Court law.

On direct appeal, and subsequently before this Court, Petitioner had relied on *Crane v. Kentucky*, 476 U.S. 683 (1986), to support his claim. In *Crane*, the Supreme Court held that the exclusion of testimony about the circumstances of the interrogation that led to a sixteen-year-old's confession deprived the accused of his fundamental constitutional right to a fair opportunity to present a defense. The Ohio Supreme Court distinguished *Crane* not only because the excluded testimony in *Crane* purported to describe external factors, such as length of the interrogation, the conditions of the interrogation room, the number of officers present during the interrogation, and the fact that the suspect's repeated requests to see his mother were denied, whereas the excluded testimony in Petitioner's case related to how Petitioner's individual psychological makeup and background could have impacted the voluntariness and reliability of his confession. The Ohio Supreme Court also distinguished *Crane* on the basis that in Petitioner's case, unlike in *Crane*, the interrogation of Petitioner was videotaped in its entirety and shown to the jury during trial; thus, the Ohio Supreme Court reasoned, the jury in Petitioner's case had the ability to view for themselves the conditions of Petitioner's interrogation, the officers' questions and statements, and Petitioner's demeanor and responses.

This Court concluded that the Ohio Supreme Court's decision did not contravene or

11

unreasonably apply clearly established United States Supreme Court precedent. (Doc. # 91, at

13-15.) This Court relied in part, as the Ohio Supreme Court had, on the fact that the jury in

Petitioner's case, unlike the jury in *Crane*, watched the entire encounter between Petitioner and

the interrogating officers and all of the circumstances surrounding Petitioner's confession. (*Id.* at

13-14.) Citing *State v. Boston*, 46 Ohio St. 3d 108 (1989), this Court proceeded to rely on the

fact that, although not mentioned in the Ohio Supreme Court's decision, the Ohio Supreme Court

had held previously that expert eyewitnesses may not, under the Ohio Rules of Evidence, offer

opinions as to the truthfulness of a witness's statement. In so doing, this Court relied on

*Montana v. Egelhoff*, 518 U.S. 37, 53 (1996), where the United States Supreme Court held that

*Crane* had done nothing to undermine the principle that the introduction of relevant evidence can

be limited by the State for a valid reason. (In *Crane*, the state courts had excluded the testimony

solely on the basis that the testimony did not relate to the credibility of the confession.)

Concluding that Ohio's state law limitations placed on experts opining about a witness's

truthfulness did not undermine fundamental elements of the defense, particularly when the jury

had had the opportunity to view a videotape of the confession in its entirety, "the Ohio Supreme

Court's decision rejecting Petitioner's claim did not violate the rule established in *Crane v.

Kentucky*." (Dc. # 91, at 15.) Petitioner takes issue with this Court's decision on a number of

levels.

Petitioner asserts that this Court erred in turning to a state evidentiary principle that was

neither asserted by Respondent herein nor relied upon by the Ohio Supreme Court in its decision

rejecting Petitioner's *Crane* claim. This Court's clear errors of fact and law, according to

Petitioner, fall into three categories:

12

> a) utilizing an overly broad construction of AEDPA to allow the affirmance of a
> state ruling under AEDPA for reasons never expressed by the state court and
> never argued by Respondent; b) relying upon an evidentiary bases [sic], which
> was subsequently overruled by the Ohio Supreme Court prior to the decision in
> Petitioner's direct appeal; and c) failing to properly apply AEDPA to Petitioner's
> *Crane* claim, which demonstrates his entitlement to relief.

(Doc. # 94, at 13.) In the first of these three arguments, Petitioner essentially reiterates his

challenge to any approach by this Court that involves applying a modified AEDPA deference to a

state court decision that rejects a constitutional claim with little or incorrect analysis. Petitioner

offers a number of arguments for why it is a clear error of law to focus on, and apply any measure

of deference to, the result of a state court decision rather than the process of a state court

decision. (Doc. # 94, at 13-15.)

The essence of Petitioner's second argument is that *State v. Boston* is neither good law

nor applicable. (Doc. # 94, at 15-16.) In *Boston*, according to Petitioner, the Ohio Supreme

Court found inadmissible a child's statements to a treating physician about sexual abuse to which

the child had been subjected. (Doc. # 94, at 15-16 (citing *State v. Boston*, 46 Ohio St. 3d 108,

129 (1989)).) Petitioner states that shortly after issuing *Boston*, the Ohio Supreme Court

modified *Boston* in *State v. Dever*, 64 Ohio St. 3d 401, 408 (1992), in a manner that, according to

Petitioner, effectively overruled *Boston* without actually saying so. (Doc. # 94, at 16 (citing *State

v. Muttart*, 116 Ohio St. 3d 5, 11 (2007)).) Petitioner reasons that this Court committed a clear

error of law in relying on *Boston* because "as *Muttart* details, the Ohio Supreme Court had *de

facto* overruled *Boston* as early as 1992, prior to Petitioner's trial and years before Petitioner's

direct appeal." (Doc. # 94, at 16.) As described below, this is a patently incorrect assertion.

In his final argument, Petitioner asserts that this Court committed a clear error of law and

13

fact when it concluded, based solely on the fact that the jury in Petitioner's case saw a videotape of Petitioner's interrogation, that *Crane* was inapposite. (*Id.* at 17.) Specifically, Petitioner asserts that, "[t]he Court committed a manifest error in law in not addressing or acknowledging [] the United States Supreme Court's historical recognition that interrogation by the police is much more than physical in nature and can be dependent upon an individual's psychological or cultural influences." (*Id.*) Petitioner argues that this Court's clear error consists of creating a bright-line rule excluding a category of evidence that *Crane*, if not by its facts then by its holding, allows. (*Id.* at 17 (citing *Crane*, 476 U.S. at 688-90).) Petitioner reasons that because *Crane* recognized the importance of both the physical and psychological environment that produces a suspect's confession, *Crane* requires the allowance of expert testimony about both and this Court committed a clear error of law in finding reasonable the Ohio Supreme Court's decision that there was no error in the exclusion of expert testimony concerning Petitioner's psychological profile proffered to shed light on the reliability of Petitioner's confession.

Petitioner asserts in his first argument that this Court committed a clear error of law by "utilizing an overly broad construction of AEDPA to allow the affirmance of a state ruling under AEDPA for reasons never expressed by the state court and never argued by Respondent." (Doc. # 94, at 13.) In so arguing, Petitioner largely reiterates his position that this Court committed a clear legal error by applying an overly broad interpretation of the AEDPA by exercising a modified deferential review of the state court's decision that focused on whether its result contravened or otherwise offended clearly established federal law. Such a state court decision deserves no deference, according to Petitioner, because the AEDPA contemplates a "*quid pro quo* situation: states provide meaningful merits review and federal courts will be constrained by

14

AEDPA unless the state court's adjudication of the merits was contrary to or an unreasonable application of clearly established law." (*Id.*) Petitioner further argues that the Court's clear error of law consists of providing a "post hoc" basis to deny habeas corpus relief in violation of *Wiggins v. Smith*, 539 U.S. 510, 529-30 (2003), and recognized by the Sixth Circuit in *Williams v. Anderson*, 460 F.3d 789, 802 (6th Cir. 2006). (*Id.* at 13-14.)

For the reasons discussed more fully above in connection with Petitioner's argument challenging this Court's application of the Sixth Circuit's modified AEDPA line of cases, as well as because Petitioner's reliance on *Wiggins* and *Williams* is misplaced, Petitioner's first argument herein does not establish that this Court committed a clear error of law in rejecting his first ground for relief. As the Court concluded in the first part of this order, the Sixth Circuit's modified AEDPA deference line of cases were good law at the time this Court issued its judgment and remain good law to date. Petitioner's arguments questioning the wisdom or fairness of *Schoenberger*'s modified AEDPA deference, including his argument that the AEDPA contemplates a "*quid pro quo* scenario," are more suited for appeal. Petitioner's reliance on *Wiggins* and *Williams* does not persuade this Court otherwise. Those cases condemning "post-hoc rationalization[s]" in the context of habeas corpus review involved after-the-fact characterizations of counsel's decision making as strategic, not a federal court's characterization of the foundation of a state court's decision rejecting a constitutional claim.

Petitioner's second argument attacks this Court's reliance on *State v. Boston* in rejecting his first ground for relief. Petitioner's third argument essentially reiterates why his first ground for relief, when reviewed *de novo*, is meritorious.

Petitioner claims that *State v. Boston*, cited by the Court for the proposition that an expert

15

may not opine on the truthfulness of a witness or party, has been "de facto overruled." (Doc. #94, at 16.) Petitioner contends that the Ohio Supreme Court overruled *Boston* in *State v. Muttart*, 116 Ohio St. 3d 5 (2007). In *Muttart*, however, the Ohio Supreme Court revisited only a single holding in *Boston*, that having to do with a child declarant's statement to a physician, a matter not at all implicated in this case.

This Court expresses its extreme displeasure as to the Petitioner's unfounded assertion that the holding in *Boston* cited by the Court is no longer good law in Ohio. After *Muttart* was decided in 2007, the Ohio Supreme Court expressly cited *Boston* in *State v. Davis*, 116 Ohio St. 3d 404, 426 (2008). Numerous Ohio decisions cite *Boston*, long after *Muttart*, for the proposition that an expert may not testify as to the truthfulness of a witness's statement, e.g., *State v. May*, 2010 WL 4892815 (Ohio Ct. App. 2010); *State v. Marshall*, 2010 WL 4158509 (Ohio Ct. App. 2010);  Typical of numerous Ohio appellate cases is *State v. Robinson*, 2010 WL 382054 (Ohio Ct. App. 2010), which held, "*Boston's* syllabus excludes expert testimony offering an opinion as to the truth of a child's statements . . . "  Even a cursory review of Ohio law would have revealed that this holding in *Boston* referenced by the Court continues to be followed by the Ohio Courts.

In keeping with the Sixth Circuit's modified AEDPA line of cases–with which Petitioner may disagree but by which this Court is bound–if the result of the state court's merits decision rejecting Petitioner's claim does not contravene or otherwise offend clearly established federal law, then Petitioner is not entitled to habeas corpus relief on that claim.  Recently and at the time of Petitioner's direct appeal, state and federal courts alike, outside and within the Sixth Circuit, consistently have distinguished *Crane* from cases in which the trial court excluded some but not

all evidence as to the circumstances surrounding an interrogation.

In *People v. Peeples*, 155 Ill. 2d 422, 616 N.E.2d 274 (Ill. 1993), the Illinois Supreme Court was faced with the question whether the trial court's limitation of the accused's cross-examination of the interrogating officer violated the defendant's due process rights. The Illinois Supreme Court answered that question in the negative, pointing out that unlike *Crane*, where the defendant had been denied any attempt to introduce evidence about the circumstances of the taking of his confession, the defendant in *Peeples* could have called other witnesses, pursued other avenues in the cross-examination of the interrogating detective, or testified himself–but chose not to follow any of those paths. 155 Ill. 2d at 492-93; 616 N.E.2d at 327. Similarly, in *People v. Page*, 2 Cal. App. 4th 161, 186, 2 Cal. Rptr. 2d 898, 913 (Cal. App. 1 Dist. 1991), the reviewing court entertained a claim challenging the trial court's restrictions on expert testimony explicitly linking psychological reasons for false confessions to the defendant's confession. The court recognized that *Crane* stood for the proposition that evidence about the manner in which a confession was obtained is relevant to the credibility, as well as the voluntariness, of the confession. *Id.* at 185; 912. The court proceeded to distinguish *Crane* because there, it was the trial court's blanket exclusion of all evidence concerning the interrogation that deprived the defendant of a meaningful opportunity to present a complete defense. The court in *Page* observed that the defendant and State alike were permitted "to thoroughly explore the physical and psychological environment in which the confession was obtained." *Id.* at 185-86; 912-13. *See also Williams v. Brunson*, Civil Action No. 1:09-cv-250, 2010 WL 3062853, at * 11 (S.D. Ohio May 3, 2010) (finding no *Crane* violation in trial court's exclusion of a single question and answer by expert witness because testimony was not highly relevant or indispensable to

17

Petitioner's defense and because exclusion did not prevent Petitioner from presenting a complete defense); *Connolly v. Sisto*, No. C 08-2797, 2010 WL 1221795, at * 17 (N.D. Cal. Mar. 24, 2010) (finding no blanket exclusion of evidence of circumstances surrounding interrogation in violation of *Crane* because interrogating officers were examined and cross-examined and videotape of the interrogation was played for jury); *Robinson v. St. Amand*, Civil Action No. 08-11535-RGS, 2010 WL 1257978, at * 9 (D. Mass. Mar. 15, 2010) (distinguishing *Crane*, where the trial court had excluded any and all facts concerning manner in which confession was obtained, because in instant case jury heard all facts relating to how confession was obtained by way of examination and cross-examination of witnesses and viewing of taped portion of confession); *State v. Black*, No. 34722, 2010 WL 761061 (W. Va. Mar. 4, 2010) ("However, unlike *Crane*, in Mr. Black's case, the lower court allowed testimony regarding the circumstances surrounding Mr. Black's statement to police, including his allegations of coercion."); *People v. Thompson*, Docket No. 286849, 2010 WL 293055, at * 2 (Mich. App. Jan. 26, 2010) (distinguishing *Crane*, where the defendant was not permitted to present any evidence demonstrating the circumstances of his interrogation, because the defendant in the instant case was permitted to argue that confession was unreliable and not credible and support that argument with evidence about the interrogation and cross-examination of the interrogating detectives).

Like the cases above and unlike *Crane*, the trial court in Petitioner's case did not exclude any and all evidence about the circumstances surrounding the interrogation and Petitioner's confession. The detectives who conducted the interrogation were examined and cross-examined, and the jury viewed a videotape of the entire interrogation. All that the trial court excluded was the proffered testimony concerning the manner in which Petitioner's background, upbringing,

18

and psychological profile made him particularly susceptible to the detectives' veiled threats and promises. Because the trial court did not exclude all evidence as to the circumstances surrounding Petitioner's interrogation, Petitioner was not deprived of the opportunity to present a defense or attack the credibility of his confession. Both the Ohio Court of Appeals and the Ohio Supreme Court recognized that fact in distinguishing Petitioner's case from *Crane*. Accordingly, the state courts' decisions rejecting Petitioner's claim did not run afoul of *Crane*.

## C. Second Ground for Relief

Petitioner next asserts that this Court committed manifest errors of fact and law in denying his second ground for relief. There, Petitioner argued that it was error to admit his coerced and involuntary confession because it was obtained through the use of coercive tactics, improper inducements, and trickery to which Petitioner, by virtue of his background and upbringing, was particularly susceptible. He also argued that the trial court erred by denying his motion to suppress the confession on the basis of an erroneous legal standard and by failing to explain the denial of his motion to suppress. (Petition, Doc. # 6, at ¶¶ 10-49; Doc. # 62, at 11-18; Doc. # 70, at 9-13.)

After reviewing at length the Ohio Supreme Court's decision rejecting Petitioner's claim on the merits, this Court concluded that the decision did not contravene or unreasonably apply clearly established federal law and did not involve an unreasonable determination of the facts. The Court reached that conclusion after reviewing the circumstances of the confession–laid out in full on a videotape of the entire interrogation–and dismissing Petitioner's assertions that the interrogating officers made threats to execute his unborn child, made unkept promises, and told lies. The Court also rejected Petitioner's contention that *Spano v. New York*, 360 U.S. 315

19

(1959), was the clearly established federal law that governed this Court's review of Petitioner's claim, noting that Petitioner was *Mirandized*, that Petitioner never requested counsel, and that Petitioner's interrogation lasted only one hour, was videotaped, and revealed no other forms of coercion.

Petitioner asks this Court to alter or amend its judgment, arguing that the Court not only failed to consider the cumulative effect on Petitioner of the threats and promises the interrogating officers made, but also failed to consider United States Supreme Court precedent. (Doc. # 94, at 19-23.) Neither argument persuades this Court that it should alter or amend its judgment. Just as Petitioner reiterates his contention that his confession was a reaction to "the threat to Petitioner's girlfriend and unborn child, the lie that Luanne Jackson had made a statement, and the promises that the detectives would advise the Court of Petitioner's cooperation," (*Id.* at 20), this Court reiterates its determinations that:

- "[t]aken as a whole, prior to the confession, and contrary to Petitioner's claim, the officers did not threaten that the child would be executed." (Doc. # 91, at 19);

- "[t]he officers made it clear that they could only advise a judge of Petitioner's level of cooperation; they told Petitioner quite explicitly that they could not make other promises." (Doc. # 91, at 19); and

- after viewing the totality of the circumstances (Doc. # 91, at 20), although Luanne Jackson never made a statement as the officers had told Petitioner (Doc. # 91, at 19), Petitioner's confession was not involuntary.

Petitioner's continued disagreement with this Court's determinations should be addressed on appeal.

Similarly, Petitioner's arguments challenging this Court's refusal to rely on *Spano v. New York* and alleging that neither this Court nor the Ohio Supreme Court considered or explained

how threats made to Petitioner differed from those at issue in *Lynumn v. Illinois*, 327 U.S. 528, 531-34 (1963), belong on appeal. Petitioner raises no new arguments to persuade this Court that the record as a whole demonstrates that his confession was the product of threats, coercive tactics, unkept promises, and lies.

### D. Fourth Ground for Relief

Petitioner proceeds to argue that this Court committed a manifest error of fact and law in denying Petitioner's fourth ground for relief. Specifically, Petitioner takes aim at this Court's findings and conclusions in rejecting his claim that his attorneys were ineffective for failing to present cultural and family evidence at the penalty phase of Petitioner's trial.

Petitioner argues that this Court failed to give effect to the affidavits of trial counsel in which they stated that their failure to investigate and present cultural evidence was the result–not of a tactical decision–but of having never represented a Mexican National. (Doc. # 94, at 23-24.) Petitioner concedes that "this Court note[d] the existence of these admissions," but insists that "the Court commit[ted] an error of fact and law to conclude in the face of these affidavits that trial counsel adequately investigated cultural aspects of a mitigation defense and demonstrated an understanding of Petitioner's culture." (*Id.* at 24.) Petitioner's argument is unpersuasive. Petitioner has not shown that this Court failed to give effect to the admissions that trial counsel made in their postconviction affidavits. Petitioner has shown only that this Court failed to give to those admissions the effect that Petitioner wanted. After full consideration of the cultural evidence that trial counsel did present at the penalty hearing, as well as the cultural evidence counsel did not present, this Court declined to "find that counsel's admitted failure to recognize the need to obtain a cultural expert amounted to deficient performance falling outside the

21

prevailing professional norms." (Doc. # 91, at 58.) Petitioner offers no new arguments to persuade this Court that it committed a manifest error of fact or law in concluding that trial counsel were not ineffective for failing to present cultural and family evidence during the penalty phase.

Petitioner proceeds to argue that this Court committed a manifest error of fact when it equated Dr. Fisher's testimony about Petitioner's history, character, and background with a "cultural defense" and described Dr. Fisher as a cultural expert. (Doc. # 94, at 24.) Petitioner argues that Dr. Fisher was not able to speak to the "unique cultural context of Petitioner's many experiences for someone so young." (*Id.* at 25.) Having reviewed the examples that Petitioner provides, however, the Court finds that Petitioner offers nothing new from what already has been argued, considered, and rejected. As such, Petitioner's arguments belong on appeal.

Petitioner next argues that this Court committed a manifest error of law in discussing the decision of *Syriani v. Polk*, 118 F. App'x 706 (4th Cir. 2004) rather than relying on the Sixth Circuit's decision in *Morales v. Coyle*, 507 F.3d 916 (6th Cir. 2007). But the two features that, according to Petitioner, distinguish *Syriani* from Petitioner's case were considered and rejected by this Court. That is, the Court is no more persuaded now than it was when it issued its *Opinion and Order* that Petitioner's trial attorneys were ineffective for the manner in which they developed and presented cultural evidence or that Petitioner's attorneys were ineffective for failing to present enough cultural evidence to the jury. In *Morales*, the petitioner's trial counsel was found to have rendered deficient performance for failing to interview any relatives, friends, or acquaintances; failing to search any education, criminal, or social services records; failing to retain a mitigation expert: failing to investigate a possible neurological deficit and the effect of

22

lifelong alcohol abuse; and failing to adequately investigate the petitioner's Native American cultural background. *Morales*, 507 F.3d at 931. It is *Morales* that is readily distinguishable from Petitioner's case. The Court is not persuaded that it committed a manifest error of law because *Syriani* is not inapposite and *Morales* does nothing to support Petitioner's claim.

Petitioner proceeds to argue that this Court's rejection of the additional family background evidence that Petitioner offered as cumulative cannot be reconciled with the state trial court's finding that there was little relevance to Petitioner's history, character, and background. In its March 31, 2010 *Opinion and Order*, this Court rejected Petitioner's claim that his trial attorneys were ineffective for failing to present additional family history evidence at the penalty hearing. Petitioner raises two challenges, the first of which centers on the fact that the state appellate court in postconviction dismissed the additional family evidence as cumulative. Petitioner argues that in finding that the state court reasonably applied *Strickland*, "this Court committed an error of law in finding the state court determination reasonable under AEDPA while simultaneously recognizing that the family mitigation was not cumulative to that that had already been produced at trial." (Doc. # 94, at 27.) Petitioner's argument is unpersuasive because Petitioner misrepresents what this Court actually said. The Court concluded that Petitioner could not demonstrate prejudice from counsel's alleged deficient performance because:

> Although not "cumulative" in the sense that it was word-for-word duplicative, the omitted information that Petitioner's sister, grandmother, and brother could have provided, there was considerable overlap between the information that Petitioner's sister, grandmother, and brother could have provided and the information that was presented. This Court is of the view that what was omitted was not so substantially different from what was presented that it can be said that but for counsel's failure to present the omitted information, there is a reasonable

23

probability that the jury would have returned life sentences as to all four victims instead of just one of them.

(Doc. # 91, at 71.) Petitioner fails to demonstrate the manifest error of fact or law.

Petitioner's second challenge focuses on this Court's alleged error in concluding that because some evidence had been presented, Petitioner could not demonstrate that additional evidence would have made a difference in the sentencing determination. Petitioner's argument that "[t]he issue under *Strickland* is not what was presented, but what with reasonable effort could have been presented" (Doc. # 94, at 28) is almost verbatim the argument that he previously made and that this Court previously rejected. Accordingly, it cannot provide a basis for Rule 59 relief.

In a notice of additional authority that Petitioner filed on March 18, 2011, Petitioner argues that the Supreme Court's recently issued decision of *Sears v. Upton* bolsters his argument that this Court and the Sixth Circuit have taken too narrow a view of *Strickland* by rejecting claims of ineffective assistance where counsel manages to present *something* in mitigation of a sentence less than death. (Doc. # 100.) In *Sears*, according to Petitioner, "the Supreme Court reversed and vacated a death sentence because the state court's treatment of the Petitioner's penalty phase *Strickland* claim was unreasonable." (*Id.* at 1.) *Sears* does not, in this Court's review, support Petitioner's arguments for Rule 59 relief because this Court did not, contrary to Petitioner's position, hold that because Petitioner's trial counsel conducted some mitigation investigation and presented some evidence in mitigation, the constitutional sufficiency of trial counsel's penalty-phase performance was immune to habeas corpus relief.

F. Seventeenth Ground for Relief

24

Finally, Petitioner raises several arguments why this Court committed a manifest error of fact and law in denying Petitioner's seventeenth ground for relief. There, Petitioner raised several allegations of racial disparities in various aspects of the criminal justice system in Ohio and Butler County. He limits his Rule 59 challenge to this Court's rejection of his claim alleging racism in the charging decision and he raises two arguments.

First, Petitioner argues that this Court erred in refusing to accord any inference of racial motivation on the part of the detective in spite of the racial slurs and disparate references that he and other investigating officers uttered even prior to Petitioner's formal arrest. The Court is unpersuaded by Petitioner's argument. This Court expressed in no uncertain terms its disdain for the racial slurs uttered by officers in this case, stating that "the use of racial slurs and other racially offensive remarks by law enforcement officers who investigated the shootings as evidenced in the habeas depositions before this Court was unfortunate, unseemly, and reflected poorly on those officers as public servants and as individuals." (Doc. # 91, at 168.) But Petitioner offered very little then, and absolutely nothing more now, to persuade this Court of a probability or possibility that there existed a nexus between the officers' regrettable language and the decision made by the State to focus the investigation on Petitioner and to charge him capitally. The decision upon which Petitioner relies, *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009), lends no support to his argument because even after assuming that the racially charged statement in that case "at most" showed discriminatory purpose, the Sixth Circuit proceeded to deny relief because the petitioner had failed to show <u>actual</u> discriminatory effect. Petitioner herein failed to show the same and fails now to demonstrate a manifest error of fact or law on the part of this Court in its denial of his claim.

25

Second Petitioner argues that in detailing its bona fide reasons for finding that Petitioner did not receive disparate treatment compared to Dorothy Jackson, this Court committed a manifest error of fact by failing to considering the timing of the racist remark and the revelation that the lead detective engaged in racial profiling by noticing the out-of-state license plates on the truck that Petitioner was driving. (Doc. # 94, at 30.) In other words, according to Petitioner, the fact that "[t]he 'wetback' term was uttered prior to the collections of any evidence at the scene and before the detective had even interviewed Petitioner" essentially negates the myriad race-neutral reasons apparent from the record for why law enforcement officers zeroed in on Petitioner rather than Dorothy Jackson. (*Id.*) The Court disagrees because even upon his second bite of the apple, Petitioner fails to offer anything but an assumption to establish a nexus between the racial remarks uttered by detectives and the fact that officers focused their investigation and prosecution on Petitioner. To prevail on a claim of discriminatory or selective prosecution, Petitioner must demonstrate actual discrimination, not just the possibility of discrimination or the evidence of racism. Neither the timing of the detectives' statements nor the suggestion that Detective Knabel engaged in racial profiling by noticing Petitioner's out-of-state license plates alter the existence of the race-neutral reasons that undermine a finding of discrimination. Further, the examples offered by Petitioner of how officers jettisoned evidence inculpating Dorothy in their quest to pin culpability on Petitioner were already considered and rejected by this Court. As such, Petitioner fails to demonstrate a basis for Rule 59 relief.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's motion to alter or amend the judgment (Doc. # 94). The Court further **DENIES** as moot Petitioner's accompanying requests

26

for factual development, to stay the Court's ruling pending the Supreme Court's decision in

*Harrington* and/or *Wiles*, to reopen these proceedings, and for oral argument. Finally, the Court

**DENIES** as moot Respondent's motion for a status conference (Doc. # 97).

     **IT IS SO ORDERED.**

                          3 - 29 - 2011

                        **EDMUND A. SARGUS, JR.**
                        **UNITED STATES DISTRICT JUDGE**